**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:14-CR-149 |
| | ) | |
| XIAFEN CHEN, | ) | Judge Thomas M. Rose |
| aka "Sherry Chen." | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION IN LIMINE**

The Defendant, Xiafen Chen, by her attorney, Peter R. Zeidenberg, respectfully brings this Motion in Limine, for an order pursuant to Federal Rules of Evidence 401 and 403 to preclude the government from introducing any evidence related to Ms. Chen's nationality, her trips to China, or her contacts and communications with her former colleague in China. The specific grounds for this Motion are set forth in the attached Memorandum in Support.

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-CR-149 |
| | ) | |
| XIAFEN CHEN, | ) | Judge Thomas M. Rose |
| aka "Sherry Chen." | ) | |
| Defendant. | | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE**

Defendant Xiafen Chen, by her attorney, Peter R. Zeidenberg, brings this Motion in Limine, and in support says as follows:

1.      Ms. Chen has worked as a hydrologist for the National Oceanic and Atmospheric Administration (NOAA) for the past seven years.  As a hydrologist, Ms. Chen helped create and build a computer model designed to provide river forecasts in the Ohio River Basin.  Ms. Chen has advanced degrees in Engineering Hydrology from the Graduate School Institutes of Water Conservancy and Hydroelectric Power in Beijing, China, and Agriculture Meteorology from the University of Nebraska.  Prior to working for NOAA, Ms. Chen worked as a hydrologist for the State of Missouri for 11 years.

2.      Ms. Chen is 59 years-old, and emigrated from China with her husband in 1992.  Ms. Chen became a permanent legal resident in 1997 and became a naturalized citizen in July, 2004.  Since she emigrated, Ms. Chen has traveled regularly to China to visit with her elderly parents.[1]

---

[1] Ms. Chen's father died in 2013.

2

3.      While on a trip to China in 2012 to visit her parents, Ms. Chen had a brief visit with a former colleague of hers.  This former colleague is also a hydrologist and worked at the Department of Water Resources in Beijing.  During their meeting, the former colleague, who has a similar professional background as Ms. Chen, asked Ms. Chen a number of questions about how the financing of dam repair in the United States worked.  Ms. Chen indicated that she did not know the answers to her former colleague's questions but, as the information was public, she could try and get these answers for him when she returned to the United States.

4.      On May 15, 2012, shortly after returning to the United States, Ms. Chen provided to her former colleague, via email, publicly available information that came directly from U.S. government web sites, as well as links to those sites.  Ex. 1.  In that email, Ms. Chen advised her former colleague that if he had any additional or follow-up questions, he should directly contact the Water Management Chief at the Army Corps of Engineers ("COE") and provided the telephone number.  Ms. Chen sent a follow-on email to her former colleague on May 29, 2012 which, once again, contained information cut and pasted directly from the COE web site – including the COE Mission Statement.[2]

5.      On May 24, 2012, Ms. Chen called Deborah H. Lee, the Chief of the Water Management Division at the COE.  Ms. Chen advised Ms. Lee that during her recent trip to China she had spoken with a former Chinese colleague.  Ms. Chen indicated that this colleague had expressed an interest in water management issues – specifically, how repairs of dams are financed and relative responsibilities between state and federal government.  Ms. Lee advised Ms. Chen that the information she was seeking was available on the COE webpage and that she

---

[2] This email was sent on May 15, 2012 and then resent on May 21, 2012, when the recipient failed to acknowledge receipt of the email.

should look at the COE Mission Statement on that website. Ms. Lee told Ms. Chen that if her former colleague had any additional questions he should contact Ms. Lee directly.

6.      On May 29, 2012, Ms. Chen sent her former colleague an email in which she recounted her conversation with Ms. Lee, the Chief of the Water Management Division of the COE. The email consisted of information cut-and-pasted directly from the COE website, and contained a link to the COE website (http://www.usace.army.mil/Missions.aspx). Ms. Chen concluded her email by telling her former colleague that if he had any additional questions, "[t]he Water Management Chief at COE said you could contact them directly." Ex. 1.

7.      Ms. Lee was apparently alarmed by Ms. Chen's request for information, and, on May 24, 2012, reported it to the Security Division at the COE. Ms. Lee reported that she believed that it was possible that Ms. Chen was attempting to improperly gather and disseminate information for a foreign government.

8.      On June 11, 2013, Special Agents from the Department of Commerce Office of Inspector General, without any advance warning, showed up at Ms. Chen's place of work and interviewed her for approximately seven hours. The bulk of that interview was focused on whether Ms. Chen provided proprietary information to Chinese nationals. Ms. Chen steadfastly denied ever providing any non-public information to anyone.

9.      On or about September 25, 2013, government agents returned to NOAA to question Ms. Chen. The reason for this interview was because Ms. Chen had just returned from her annual trip to China to visit her mother. The agents wanted to know where Ms. Chen had traveled in China and with whom she had visited. Specifically, the agents wanted to know if Ms.

Chen had visited with any government officials during her trip. Ms. Chen steadfastly denied

meeting with anyone other than her family while on this trip.[3]

9.      The government subsequently obtained a search warrant for Ms. Chen's personal

Yahoo! email account and searched all of her emails for the past seven years.[4] Ex. 2. According

to the government, the "majority of the email communications contained in the target account

appeared to be marketing and spam messages, with emphasis on frequent flier programs,

coupons/shopping, and personal investing matters. No e-mail messages either to or from Tian

Rui Chen or Yong Jiao [Chen's former colleague] were found." Ex. 2 at page 6 (highlight

added).

10.     On or about September 25, 2014, Ms. Chen and her husband were scheduled to

depart Port Columbus International Airport to travel to Beijing, China to visit Ms. Chen's

mother. Shortly before the plane departed, Ms. Chen and her husband were pulled from the

queue and taken aside by government agents. These agents pulled both Mr. and Ms. Chen's

luggage from the plane and searched it as well as all of the Chens' carry-on luggage. The agents

refused to answer Ms. Chen's inquiries about what it was they were looking for. After

approximately 45 minutes, after apparently finding nothing of interest in the Chen's luggage, the

agents permitted the Chens to reboard the plane and travel to China.[5]

11.     Upon her return from China on October 17, 2014, Ms. Chen was questioned

extensively by Customs agents regarding who she visited with while she was in China. The

---

[3] The government has not provided the defense any discovery regarding this interview.

[4] The government has not provided to the defense a copy of this search warrant or supporting affidavit,nor has the government provided copies of the 7 years-worth of emails seized pursuant this warrant.

[5] The government has not provided any discovery regarding this search. In addition, the government made a copy of a flash drive that was in Ms. Chen's husband's possession; however, the government has not provided the defense with a copy of this flash drive.

questioning was persistent and highly unusual – Ms. Chen had never been questioned in this fashion upon returning to the United States from any of her previous trips.[6]

12.     Despite searches of Ms. Chen's personal emails, work computer, luggage, and multiple interviews of Ms. Chen, her colleagues, and supervisors, the government has not identified a scintilla of evidence that Ms. Chen has ever provided any non-public information to *anyone*, let alone anyone in China.

13.     Ms. Chen is not charged with espionage or providing aid to any foreign national. Rather, as noted above, she is simply charged with improperly accessing and "stealing" a document from the U.S. government web site that she periodically accessed to perform her job.[7] She is also charged with two counts of false statements when she denied to government agents that she accessed and downloaded this information without authority.

13.     The defense respectfully moves, *in limine*, that this Court preclude the government from introducing any evidence related to Ms. Chen's nationality, her trips to China, or her contacts and communications with her former colleague in China. This evidence is not relevant under Federal Rule of Evidence 401 and, even if considered relevant, its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403.

> Federal Rule of Evidence 401 defines 'relevant evidence' as 'evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Even relevant evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

---

[6] The government has not provided any reports or the notes related to this interview.
[7] The government has failed to provide discovery regarding which page or pages of the website that Ms. Chen allegedly improperly accessed.

*Antioch Co. Litig. Trust v. Morgan*, No. 3:10CV156, 2014 WL 2117450, at *1 (S.D. Ohio May

21, 2014) (quoting Fed. R. Evid. 401 and 403); *see also United States v. Warman*, 578 F.3d 320,

347 (6th Cir. 2009) (analyzing rules 401 and 403).

14.     Here, the danger of prejudice and confusion is manifest.  Despite what appears to

be a very lengthy and intensive investigation, the government has not uncovered any evidence to

connect Ms. Chen's communications with and regarding her former colleague in China with the

allegedly improper accessing and downloading of information from her office computer.

Despite the government's searches of Ms. Chen's personal emails, office computer, multiple

interviews of her and her colleagues, a review of her financial records, and a seven hour-long

interview of Ms. Chen conducted without advance warning or the presence of counsel,[8] the

government has found no evidence that Ms. Chen ever gave her former Chinese colleague any

non-public information of any kind, much less any information that she either improperly

accessed or stole. In other words, the allegations in the indictment are wholly unconnected and

unrelated to Ms. Chen's interactions with her Chinese colleague.

15.     Thus, introducing any evidence that Ms. Chen visited with a former Chinese

colleague and later provided him with publicly available information – information which is not

referenced in the instant indictment – would invariably lead to the danger of the jury speculating

that the matters covered by the instant indictment were somehow related to Ms. Chen's

interactions with her former Chinese colleague.  Such speculation would be, quite literally,

baseless, and would cause Ms. Chen undue prejudice.

---

[8] Agents unexpectedly showed up at Ms. Chen's place of work on June 11, 2013 and interviewed her for seven
hours.  During that interview, Ms. Chen asked the agents if she should have an attorney present with her, and was
advised that this was not necessary.  Of course, the government has alleged Ms. Chen was untruthful during this
interview, leading to two counts of making false statements, in violation of 18 U.S.C. §1001.

16.     The government has not charged Ms. Chen with any offense related to her interactions with her former Chinese colleague.  Therefore, any evidence related to that meeting should be precluded from trial, as its admission would invariably lead to "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *See, Antioch Co. Litig. Trust v. Morgan*, No. 3:10CV156, 2014 WL 2117450, at *1

December, 29, 2014

Respectfully submitted,

| | |
|---|---|
| */s/ Thomas E. Zeno* | */s/ Peter R. Zeidenberg* |
| Thomas E. Zeno (0088870) | Peter R. Zeidenberg, *Pro Hac Vice* |
| SQUIRE PATTON BOGGS (US) LLP | ARENT FOX LLP |
| 221 East Fourth Street, Suite 2900 | 1717 K Street, N.W. |
| Cincinnati, Ohio 45202 | Washington, D.C.  20006-5344 |
| Telephone: (513) 361-1202 | Telephone: (202) 857-6000 |
| Facsimile:  (513) 361-1201 | Facsimile: (202) 857-6395 |
| thomas.zeno@squirepb.com | peter.zeidenberg@arentfox.com |

*Attorneys for Defendant Xiafen "Sherry" Chen*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of December 2014, I electronically filed the foregoing Motion to Dismiss the Indictment and the Memorandum in Support with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ Thomas E. Zeno
Thomas E. Zeno
*Attorney for Defendant Xiafen "Sherry" Chen*