UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No.: 3:14CR149TMR |
| **Plaintiff,** | : | **OPPOSITION TO MOTION IN LIMINE** |
| **vs.** | : | |
| **XIAFEN CHEN,** | : | |
| **Defendant.** | : | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Southern District of Ohio, hereby files its opposition to the defendant's motion in limine. This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and any further evidence or argument as may be presented at any hearing on this matter.

DATED: January 28, 2015

Respectfully submitted,

CARTER M. STEWART
UNITED STATES ATTORNEY

s/Brent G. Tabacchi
DWIGHT K. KELLER
BRENT G. TABACCHI (6276029 IL)
Assistant United States Attorneys
Attorneys for Plaintiff
602 Federal Building
200 West Second Street
Dayton, OH 45402
Telephone: (937) 225-2910
Fax: (937) 225-2564

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### INTRODUCTION

Attempting to invoke Federal Rules of Evidence 401 and 403, defendant Xiafen "Sherry" Chen improperly seeks to exclude from trial evidence that is directly probative of the crimes alleged against her. In particular, Ms. Chen asks this Court to bar as irrelevant and unfairly prejudicial evidence concerning her 2012 trip to the People's Republic of China in which she met with a former colleague and Vice Minister of China's Water Institute who sought specific information from her concerning dams in the United States.[1] (*See* R. 20, Def. Motion, at 63). Ms. Chen makes this claim even though the superseding indictment specifically alleges that, in violation of 18 U.S.C. § 1001, she lied to federal investigators concerning the timing of this trip. (*See* R. 28, Superseding Indictment, at 124-25).

Under the liberal standards of Rule 401 and 403 – both of which favor admissibility of evidence – testimony and records confirming Ms. Chen's 2012 trip to China and with whom she met during those travels constitute relevant, non-prejudicial evidence of the crimes

[1] Ms. Chen also seeks to exclude information related to her "nationality." As a legal term of art, nationality generally refers to an individual's country of citizenship. *See* BLACK'S LAW DICTIONARY (2009) (defining "nationality" as "[t]he relationship between a citizen of a nation and the nation itself, customarily involving allegiance by the citizen and protection by the state; membership in a nation; This term is often used synonymously with citizenship"). Ms. Chen is an United States citizen. It is unclear to the United States how this fact, if referenced at trial, could even arguably prove prejudicial to her. In any event, the United States does not intend to introduce evidence concerning Ms. Chen's citizenship at trial.

with which she was charged. These matters directly establish that Ms. Chen lied to agents concerning the timing of her last interactions with her colleague in China. Moreover, this evidence also demonstrates that Ms. Chen accessed a restricted Government database for a non-official, personal purpose – namely, to review sensitive Government information in an effort to respond to an inquiry from an individual who worked outside of the United States Government. For these reasons, Ms. Chen's motion lacks merit.

## II

## BACKGROUND

### A. Ms. Chen's 2012 Trip to China

During late April 2012 and early May 2012, Ms. Chen, an United States citizen who worked as a hydrologist for the National Oceanic and Atmospheric Administration (NOAA), traveled to China to visit family members. (*See* R. 20, Def. Motion at 63). While there, Ms. Chen also met with a former colleague and Vice Minister of China's Water Institute. (*See* R. 20, Def. Motion at 63). This individual asked Ms. Chen certain questions concerning dams in the United States; apparently unable to answer these inquiries, she agreed to attempt to collect this information for him upon her return to this country.[2] (*See* R. 20, Def. Motion at 63).

Within days of this meeting, Ms. Chen returned to her NOAA facility in Wilmington, Ohio, and improperly obtained a co-worker's

---

2 The United States notes that, in a self-serving statement in her brief, Ms. Chen claims that she agreed only to provide "public" information to the official.

password to the government-restricted portions of the National Inventory of Dams ("NID") database. (*See* R. 28, Superseding Indictment, at 122-24). Using this password, on at least two occasions, Ms. Chen logged onto these restricted database fields and downloaded to her computer sensitive information from them. (*See* R. 28, Superseding Indictment, at 122-24). Ms. Chen did not herself have a password that permitted her to enter the database or otherwise download materials from it to her computer for any purely personal purpose. (*See* R. 28, Superseding Indictment, at 122-24).

During June 2013, federal agents contacted Ms. Chen and proceeded to speak with her concerning, among other things, whether she had ever accessed the government-restricted portions of the National Inventory of Dams database. (*See* R. 28, Superseding Indictment, at 122-24). During this conversation, Ms. Chen acknowledged that a colleague in Beijing had approached her concerning locks and dams in the United States, but indicated that this conversation had occurred two years ago, *i.e.*, in 2011 – over a year before she allegedly improperly accessed the government restricted-portions of the NID database and downloaded to her computer information from it. (*See* R. 28, Superseding Indictment, at 124-25). During the interview, Ms. Chen ultimately voluntarily produced for the special agents certain emails from her personal email account documenting conversations in 2012 between herself and the colleague in China. (*See* R. 28, Superseding Indictment, at

124-25). When asked why she had conversed with this individual on her personal -- as opposed to official government -- email, Ms. Chen indicated that it was a "fuzzy boundary" in that her colleague was making a personal, as opposed to official, request for information concerning the United States's dams.

**B. The Superseding Indictment**

During January 2015, a federal grand jury returned a multi-count superseding indictment against Ms. Chen, stemming from her alleged improper access to the restricted portions of the NID database and ensuing interview with federal agents. In particular, Count One alleged that, in violation of 18 U.S.C. § 641, Ms. Chen "knowingly, intentionally, and without proper authority . . . convert[ed] to her own use . . . restricted and proprietary computerized fields of data . . . contained in the [NID]." (*See* R. 28, Superseding Indictment, at 121). In a similar vein, Counts Two and Three charged Ms. Chen with intentionally exceeding her authorized access to these same portions of this database, in violation of 18 U.S.C. § 1030. (*See* R. 28, Superseding Indictment, at 121-22).

The superseding indictment also contained multiple false statement charges against this defendant, including Count Eight, which specifically alleged that, during her June 2013 interview with federal agents, Ms. Chen "knowingly and willfully [made] a material false representation [namely] – the last occasion she was approached by an individual identified to the Grand Jury as 'J.Y', the purported

Vice Minister . . . of China['s] Water Institute was in 2011." (R. 28, Superseding Indictment, at 124-25). The superseding indictment elaborated that Ms. Chen's statement was false in that "she had personally met and held discussions with 'J.Y' . . . during a visit to that [China] between April 14 and May 8, 2012." (*Id.*)

**III**

**ARGUMENT**

**A. Ms. Chen's Travel to China and Ensuing Meeting with a Former Colleague There During 2012 are Relevant and Not Unfairly Prejudicial Within the Meaning of Rule 401 and 403.**

Consistent with Rules 401 and 403, the United States may properly introduce at trial evidence concerning Mr. Chen's 2012 trip to China and ensuing visit with her colleague in which he requested information concerning dams in the United States. This information is directly relevant to the charged offenses, and its prejudice to the defense results, not from an improper basis, but from its probative force.

First, these matters prove relevant under Rule 401's "extremely liberal" standards of admissibility. *United States v. Deuman*, 568 Fed. Appx. 414, 420 (6th Cir. 2014). This provision deems evidence relevant so long as it "has any tendency to make a fact," which is of consequence in determining the action, "more or less probable than it would be without [the material.]" Fed. R. Evid. 401(a)-(b). Under this broad standard, "even if a district court believes the evidence is insufficient to prove the ultimate point for which it

is offered, it may not [under Rule 401] exclude the evidence if it has the slightest probative worth." *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006) (district court properly observed that government was "permitted to build an incremental case" under Rule 401). Nor may a district court deem evidence irrelevant merely given "the availability of alternative proofs of [an] element." *United States v. Douglas*, 482 F.3d 591, 597 (D.C. Cir. 2007).

Here, the evidence concerning Ms. Chen's 2012 trip to China and ensuing meeting with a colleague there satisfy this standard. Count Eight of the superseding indictment alleges that, in violation of 18 U.S.C. § 1001(a)(2), Ms. Chen intentionally lied to federal investigators concerning the timing of these events, advising them that it occurred in 2011 – a full year before she allegedly improperly accessed a protected government computer system. Evidence that Ms. Chen traveled to China during 2012 and met with a colleague at that time therefore directly establishes an essential element of the charged "1001" offense – namely, a false statement to investigators. *See* Sixth Circuit Pattern Jury Instruction 13.02 (stating that, in prosecution under 18 U.S.C. § 1001, the United States must establish, among other things, that the defendant's "statement was false"). This evidence is therefore relevant to the superseding indictment.

Additionally, a jury is not required to consider a case in a factual vacuum; it is well-established that the United States properly may introduce evidence that provides background to, and

establishes the context for, the charged offenses. *See, e.g.*, *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (res gestae evidence helps provide context to the jury); *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (barring res gestae evidence would be tantamount to requiring the jury to "make its decision in a void without knowledge of the time, place, and circumstance of the acts which form the basis for the charge") Indeed, the meeting in which a colleague requested information concerning dams in the United States – a request that Ms. Chen tacitly acknowledged was a personal, not governmental request for information – establishes that Ms. Chen accessed the restricted database for personal, as opposed to, official government reasons. For similar reasons, this information indicates that, in downloading sensitive information to her computer – whether ultimately passed to her colleague or not – Ms. Chen had converted this government material for her own personal use. *See, e.g.*, *United States v. Sparkman*, 112 Fed. Appx. 358, 360 (5th Cir. 2004) (temporary conversion of government funds for own use satisfied elements of 18 U.S.C. § 641).

Second, the evidence should not be barred under Rule 403. This provision contemplates that "[t]he court may exclude relevant evidence if its probative value is *substantially* outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). "Unfair prejudice

‘does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.’” *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). In sum, Rule 403 favors admissibility; as such, exclusion of evidence under this provision constitutes an extraordinary remedy. *See United States v. Jones*, 554 Fed. Appx. 460, 473 (6th Cir. 2014) (White, J., concurring) (“Rule 403 favors admissibility”); *see also United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (“Rule 403 is an extraordinary remedy which the district court should invoke sparingly,” and “[t]he balance ... should be struck in favor of admissibility”).

As indicated above, the evidence that Ms. Chen seeks to exclude as unfairly prejudicial directly establishes an element of a charged offense – namely, that her statement concerning the timing of her visit to China and ensuing meeting with her colleague was false. This evidence has legitimate probative force and therefore may not be excluded. *See Gibbs*, 182 F.3d at 430. Likewise, these matters properly establish not only Ms. Chen’s intent and motive for accessing and downloading information from the database but also that she did so in an effort to convert this government property for personal use. To be sure, in the most conclusory manner, Ms. Chen argues that this evidence will cause the jury to “baselessly speculate” that there is connection between her efforts to access

the database and her colleagues request for information. However, it is well-established that the close temporal connection between events as happened here – namely, mere days separating the colleague's request for information and Ms. Chen's decision to access a database to which she lacked a password and had no governmental purpose for viewing -- establishes a permissible link between the two. *Cf. United States v. Watson*, 489 Fed. Appx. 922, 927 (6th Cir. 2012) (noting relevance of temporal connection between illegal search and later confession); *Parries v. Makino, Inc.*, 148 Fed. Appx. 291, 301 (6th Cir. 2005) ("The Sixth Circuit has found timing to be a relevant factor in a showing of causal connection" between two events). Nor has Ms. Chen articulated how evidence of this type – namely, a meeting between a self-described former colleagues – would cause a jury to convict based, not on the facts and law, but upon irrational passion or confusion. *See, e.g., United States v. Buford*, 106 Fed. Appx. 400, 403 (6th Cir. 2004) (testimony that defendant threatened witnesses admissible under Rule 403 as threats not "inflammatory"); *United States v. Hollie*, 198 F.3d 248, 1999 WL 1021860 at * 8 (6th Cir. 1999) (autopsy photos admissible under Rule 403 where they negated defendant's claim concerning cause of death). In sum, this evidence is also admissible under Rule 403.

**III**

**CONCLUSION**

The United States respectfully requests that the Court deny the defendant’s motion.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on defendant's counsel this 28th day of January 2015 via the Court’s ECF System.

s/Brent G. Tabacchi
BRENT G. TABACCHI
Assistant United States Attorney