UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:14-CR-149 |
| | ) | |
| XIAFEN CHEN, | ) | Judge Thomas M. Rose |
| aka "Sherry Chen" | ) | |
| Defendant. | ) | |

**MOTION TO PRECLUDE ADMISSION OF 404(b) EVIDENCE**

Defendant Xiafen "Sherry" Chen, by and through her counsel, Peter R. Zeidenberg, respectfully brings this Motion to Preclude the Admission of 404(b) Evidence. The proffered evidence is not admissible because its admission would serve no legitimate evidentiary purpose and would unfairly prejudice the defendant. The grounds for this Motion are set forth in the attached Memorandum in Support.

1

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:14-CR-149 |
| | ) | |
| XIAFEN CHEN, | ) | Judge Thomas M. Rose |
| aka "Sherry Chen." | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO PRECLUDE
ADMISSION OF 404(b) EVIDENCE**

Ms. Chen has been charged in an eight-count Superseding Indictment with one count of theft, in violation of 18 U.S.C. § 641, two counts of unlawful access of a computer, in violation of 18 U.S.C. § 1030(a)(2), and five counts of false statements, in violation of 18 U.S.C. § 1001.

On February 6, 2015, the government provided notice that it intended to introduce evidence at trial under Federal Rule of Evidence 404(b) "for the purpose of proving: motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, lack of accident and/or part of the *res gestae* of the charged offenses." Ex. 1, p. 1. By simply quoting the text of the rule, which identifies all of the legally permissible reasons why 404(b) evidence can be admitted at trial, the government fails to give any true notice of why it contends this evidence is admissible. The government has failed to specify a legitimate legal basis to admit the proffered 404(b) evidence.

The government seeks to introduce evidence of three separate transactions at trial. None of the three has any legitimate bearing on the issues that the jury will have to decide. Rather, taken as a whole, the evidence contained in the government's notice would cause significant prejudice to Ms. Chen in the eyes a jury, which would likely suspect, if not conclude, that based

2

on this "other bad acts" evidence that Ms. Chen was engaged in some form of espionage or attempted espionage on behalf of China.

## BACKGROUND

The government opened this investigation because it believed—wrongly, as it turned out—that Ms. Chen was providing restricted information to Chinese nationals. As a result of these suspicions, the government obtained a search warrant to seize all of Ms. Chen's personal emails for the past seven years; searched Ms. Chen's work computer; searched Ms. Chen and her husband when they departed to China to visit Ms. Chen's elderly parents; reviewed years of Ms. Chen's bank and financial records; and subjected Ms. Chen to a seven-hour-long interrogation, without the benefit of counsel and no advance warning about events that occurred more than one year prior. All of these efforts did not turn up a scintilla of evidence that Ms. Chen ever provided any restricted information to *anyone*, let alone a Chinese national.

The sum total of all of the government's searches turned up a single document—downloaded twice—on Ms. Chen's computer at the National Oceanographic and Atmospheric Administration (NOAA) where she performed computer modeling of the Ohio River Basin to help predict flooding events. This document, from the National Inventory of Dams (NID)[1] website, contained information concerning dams in the State of Ohio. There was no evidence found that Ms. Chen ever renamed or moved the downloaded files from her work computer. *See* FBI Forensic Report, Ex. 2, p. 2.

Rather than closing its investigation when it determined that Ms. Chen had, in fact, never disseminated any restricted or proprietary information to anyone—let alone the Chinese—the government plunged ahead, and charged Ms. Chen with unlawfully accessing the NID database,

---

[1] The NID is a database containing approximately 70 fields of data pertaining to nearly every dam located in the United States and its territories. Approximately 64 of these fields are publicly available; access to the remaining fields is available to anyone with a ".gov" or ".mil" e-mail address.

and then, according to the government, lying when she denied that she had done anything unlawful.[2]

The government's decision to prosecute Ms. Chen is particularly mystifying because it is undisputed that Ms. Chen's co-worker, who was the office expert concerning the NID, voluntarily provided his password to her so that she could access the NID database. There is no dispute about this because the co-worker provided Ms. Chen the password via e-mail. The co-worker explained to investigators that he had no reservation about providing Ms. Chen his password because, "as a co-worker [Ms. Chen] really has need to get [this] data" and the information in the NID "would [have been] helpful to her." *See* Ex. 3, Notes of Ray Davis interview, bates 0502. Moreover, as the co-worker explained to investigators, there was "certainly nothing secret/top secret" in the NID and, indeed, he did not "think any of it [was] sens[itive]." *Id*. at Bates No. 0500.[3] In fact, minimal effort was put into maintaining the security of the NID.[4] The same co-worker told government investigators that he had "been letting others

---

[2] Specifically, the false statements counts allege that Ms. Chen falsely denied that she logged onto or downloaded information from the NID website "without authority" (two counts), and that she lied when she denied obtaining or using her co-worker's password (two counts) – as opposed to her simply not recalling this event. Ms. Chen is also charged with lying when, initially, she stated that these events occurred in May, 2011 when, in fact, they occurred in May, 2012.

[3] Given that Ms. Chen has been charged with five counts of false statements for misremembering various details of this event, it is more than a little ironic that this co-worker, when questioned by the government, initially claimed that he had no recollection of providing Ms. Chen with his password. It was only when he was shown a copy of his e-mail to Ms. Chen that he recalled providing her the password. He explained to the investigators that it was difficult to recall the event, due to the one year passage of time. *See* Ex. 3, Bates No. 0502. Needless to say, this co-worker was not charged with making any false statements to investigators. Nor was he charged with aiding and abetting or conspiring with Ms. Chen in connection with sharing the password with her.

[4] This is, perhaps, unsurprising, when one considers that virtually all of the information on the NID is publicly available from a wide-variety of sources. No doubt this at least partially explains why neither NOAA or the Army Corps of Engineers ("ACE") provided any training to Ms. Chen or her colleagues about any security measures that should be taken regarding the NID or protecting its data.

use" this password. The password, along with many others, was widely available, as it was kept in a binder in the "Ops" Room. *Id.* at Bates No. 501.[5]

As the foregoing makes clear, there is no dispute that Ms. Chen accessed and downloaded a document from the NID.[6] The critical issue at trial will be whether this act was done with a bad intent, *i.e.,* that Ms. Chen knew her conduct was wrongful. However, because Ms. Chen's

---

[5] Other witnesses told investigators that the binder was labeled "Coffee Fund." The fact that the office passwords were kept in this fashion is indicative of just how little effort was put into maintaining the security of the NID.

[6] The government's use of 18 U.S.C. § 1030(a)(2) under these circumstances – where a government employee, in the course of doing her job, accessed a government database and downloaded a document *which she then did nothing with, i.e., did not use it for malicious purpose or sell it for financial gain or for use in a criminal enterprise*, is literally unprecedented. The defense has surveyed the history of government prosecutions pursuant to this statute and has not found a case with facts even remotely close to the instant case. *See* Second Am. Indictment, *United States v. Bossinger*, No. 1:06-cr-54-A (W.D.N.Y. July 26, 2007) (Customs and Border Patrol officer accessed the "TECS" database and ran a license plate number contrary to agency policy requiring use of the database only for official purposes in order to assist others engaged in illegal activity); Superseding Indictment, *United States v. Cave*, No. 8:12-cr-417 (D. Neb. Jan. 23, 2013) (police officer accessed state's criminal justice system database for non-law-enforcement reasons in order to obtain information that he then sold to entities seeking to repossess cars); Superseding Indictment, *Collins v. United States*, No. 8:04-cr-321-JSM-EAJ (M.D. Fla. Dec. 16, 2004) (Deputy Sheriff provided information to co-defendant from national and state law enforcement databases that were used by the co-defendant to extort, make threats, and commit violent acts against others); Indictment, *United States v. Craig*, No. 4:08-cr-215 (S.D. Tex. Apr. 16, 2008) (subcontractor at Marine Corps Reserve Center accessed a private Marine database and extracted the names and SSNs of 17,000 Marine employees to sell for $500 to an undercover FBI agent posing as a Chinese agent); Indictment, *United States v. Moran-Toala*, No. 1:08-cr-103-FB (E.D.N.Y. Feb. 19. 2008) (Customs and Border Patrol officer accessed the "TECS" database after request from her boyfriend who was involved in conspiracy to import drugs); Superseding Information, *United States v. Perez*, No. 1:07-cr-240-SMS (E.D. Cal. Nov. 3, 2008) (seasonal employee of IRS accessed database of tax returns to access the returns of 24 people including her daughter); Indictment, *United States v. Rodriguez*, No. 09-cr-60083-WJZ (S.D. Fla. Apr. 3, 2009) (employee of Social Security Administration accessed SSA's database for non-business reasons in order to obtain salary information and other personal details regarding 17 persons he knew); Indictment, *United States v. Salum*, No. 2:05-cr-137-MEF-SRW (M.D. Ala. May 25, 2005) (police officer accessed state's criminal justice database to obtain and turn over to a private investigator the photograph and personnel records of a former officer testifying in an upcoming criminal case); Information, *United States v. Slaughter,* No. 2:05-cr-586-GP (E.D. Pa. Sept. 30, 2005) (IRS employee accessed an IRS database containing taxpayer information on hundreds of occasions in order to find children who were not claimed by anyone as dependents in order to claim those children as her own dependents); *United States v. Reyeros*, 537 F.3d 270 (3d Cir. 2008) (Customs and Border Patrol Inspector accessed Customs database of suspected illicit import companies in order to determine if a particular company his drug conspiracy intended to use to import cocaine had been previously flagged as suspicious); *United States v. Teague*, 646 F.3d 1119 (8th Cir. 2011) (contractor at Department of Education used her privileged access to the National Student Loan Data System in order to access the student loan records of President Obama).

5

conduct was entirely transparent throughout—it was Ms. Chen who told her supervisors at work about the request from a former colleague in China, and it was Ms. Chen who e-mailed these same supervisors asking for alternative, *public* sites because information she reviewed on the NID was not available to the public—the government seeks to improperly buttress its case with unfairly prejudicial evidence.

The government seeks to introduce, pursuant to 404(b), evidence of other allegedly "bad acts." By doing so, however, the government will be effectively suggesting to the jury that Ms. Chen was indeed acting on behalf of Chinese agents, even though the government was unable to catch her in the act or, for that matter, to find any evidence whatsoever that she gave any confidential information to anyone in China. The unfair prejudice created by this is manifest, and the Court should not permit it.

## RULE 404(b) GENERALLY

By its express terms, Rule 404(b) prohibits the introduction of evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion that person acted in accordance with the character." Fed. R. Evid. 404(b); *see, e.g.*, *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001) (evidence not admissible to "show the defendant's 'character' or 'propensity' to commit bad acts"); *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000) (Rule 404(b) "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on one's character"); *United States v. Ismail*, 756 F.2d 1253, 1258 (6th Cir. 1985) ("The law is clear . . . that evidence of past criminal activity is inadmissible to show criminal propensity."). While there are, to be sure, purposes for which evidence of prior bad acts is admissible, several of which are identified in the rule itself, "[t]he mere recitation by the prosecution that evidence of the accused's bad acts is offered under an exception is not sufficient." *United States v. Ring*, 513 F.2d 1001, 1004-05 (6th Cir. 1975). Courts must exercise

6

caution in the admission of Rule 404(b) evidence because of the substantial impact which other bad acts evidence may have on the defendant's rights to the presumption of innocence and to proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Wright*, 901 F.2d 68, 70 (7th Cir. 1990) ("[A] jury is not likely to insist on the government's satisfying so demanding a standard of proof if the defendant is a thoroughly bad sort who even if not clearly guilty of the crime with which he is charged is no doubt guilty of some similar crime or crimes for which he may never have been caught . . . ."); *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985) (it is "fundamental to American jurisprudence" that "a concomitant of the presumption of innocence is that a defendant be tried for what he did, not for who he is").

The Sixth Circuit has articulated a three-part analysis for the admissibility of evidence under Rule 404(b):

> A party seeking to admit 404(b) evidence must first demonstrate that the other bad acts occurred. The party must then cite a specific purpose for which the evidence is offered, after which the trial court must determine whether the probative value of the identified purpose outweighs the risk of unfair prejudice. Thus, a party seeking admission of "other acts" evidence must show the evidence is probative of a material issue other than character.

*Hardy*, 228 F.3d at 750 (citations omitted).  It does not, however, suffice for the government simply to identify the purposes for which the evidence is offered, as the government has done here in pointing to "[m]otive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, lack of accident and/or part of the *res gestae* of the charged offense."  Instead, the government, as the proponent of the evidence, must go further: it must demonstrate the relevance of the evidence to the purpose for which it is offered.  *See United States v. Reed*, 647 F.2d 678, 687 (6th Cir. 1981) ("[C]aution and judgment are called for and a trial judge faced with another crimes problem should require the Government to explain why the evidence is relevant and necessary.").

7

"[T]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *United States v. Johnson*, 27 F.3d 1186, 1191 (6th Cir. 1994).  In conducting this inquiry—which requires "close and careful analysis"—the trial court must ask whether "(1) the evidence is offered for an admissible purpose, (2) [whether] the purpose for which the evidence is offered is material or 'in issue,' and (3) [whether] the evidence is probative with regard to the purpose for which it is offered."  *United States v. Merriweather*, 78 F.3d 1070, 1073 (6th Cir. 1996); *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)).

The government's proffered evidence fails because the incidents it describes are not in fact probative of any relevant issue at trial.  "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."  *Huddleston v. United States*, 485 U.S. 681, 689 (1988).  Moreover, even if the Court should conclude that some or all of the evidence has probative value on a material issue with respect to the charged offenses, it must then consider whether that probative value outweighs the substantial unfair prejudice which would inexorably flow from the admission of the evidence.  "When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered: to suggest that the defendant is a bad person . . . and that 'if he did it before he probably did it again.'"  *Johnson*, 27 F.3d at 1193.  Therefore, "[a] legitimate component of [the Rule 403] weighing process is the trial court's informed judgment whether, despite the 'technical' admissibility of the other acts evidence, the jurors are more likely than not to use the evidence for the very purpose for which the first sentence of [Rule 404(b)] states that it may not

8

be used." *Hardy*, 228 F.3d at 750. In addition, evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This memorandum will also demonstrate that all of these considerations counsel exclusion of the evidence proffered by the government.

## THE GOVERNMENT'S 404(B) NOTICE

*Providing Data to Tom Adams*

Taking the government's 404(b) notice in reverse order, the government has stated that it seeks to introduce evidence concerning:

> The facts and circumstances surrounding the defendant's May 2013 e-mail string generated by and between Thomas E. Adams, III (a non-NOAA employee at that time) in which she provided to Mr. Adams certain sensitive NOAA data in direct violation of an April 16, 2013 office-wide policy directive issued by Trent Schade, the Hydrologist in Charge of NOAA's Wilmington, Ohio facility that all outside requests for data or code be first vetted and cleared through him. When questioned about this incident, and the source and timing of her knowledge of Mr. Schade's policy directive, the defendant provided untruthful, and otherwise deceptive explanations to criminal investigators.

404(b) Notice, Ex. 1, p. 1.

It is difficult to know where to begin identifying the reasons why this evidence should not be permitted. First, contrary to the government's assertion, the information that Ms. Chen provided to Mr. Adams—her former boss at NOAA who sought some NOAA data to assist him in writing a research paper—was not "sensitive," restricted, or proprietary.[7] Moreover, making this type of information public is the mission of River Forecast Centers and the National Weather Service—it is how the public can be informed about whether the rivers are likely to flood or not.

---

[7] Very similar information was available publicly in six-hour increments as the official public forecast; Mr. Adams was seeking the information in one-hour increments to reflect model performance alone, without including the influence of forecasted precipitation and manual forecast adjustments made by Ohio River Forecast Center staff.

9

This type of data is routinely provided by the River Forecast Centers and the National Weather Service without hesitation to researchers.

Second, the government's assertion that providing this information to Mr. Adams constituted some sort of breach of security is not true and is contradicted by Mr. Schade himself. When government investigators asked Mr. Schade about this incident, he said that while he "cautioned the employees not to provide ADAMS with data or code, [ ] Schade would not believe that this data or code [provided to Mr. Adams] would be considered proprietary data." Ex. 4, ROI of Trent Schade June 8, 2014, p. 2.[8]

Third, Mr. Schade did not consider Ms. Chen's sending Mr. Adams the data in question a security breach. What the government describes as an "office-wide policy directive issued by" Mr. Schade is, in fact, a 13-word email, from Mr. Schade to Mr. Adams, with a "cc" to the office which read, in its entirety: "Tom, Please send your requests for data or code through me. Thanks, Trent." Ex. 6. The fact that Mr. Schade himself considered this e-mail a request ("please") and not a directive is, no doubt, because no law or regulation prohibited either the request or the provision of the information in question. Moreover, the e-mail was directed at Mr. Adams, not at the staff. No basis exists for the government's argument that this e-mail request to

---

[8] The full contents of Mr. Schade's two interviews with investigators are truly revelatory. Mr. Schade, who was Ms. Chen's supervisor after Mr. Adams left NOAA in February, 2013, described Ms. Chen as a "great performer all ways around." Ex. 4, at 1-2. In addition, Mr. Schade confirmed that the office passwords were kept in a notebook labeled "Coffee Fund," which itself was kept in a non-restricted location in the office. *Id.* at 3. In his first interview with the government, on June 12, 2013, Mr. Schade was asked whether he recalled Ms. Chen ever making a request for public information after she returned from China. Ex. 5, ROI of Trent Schade June 12, 2013, p. 2. Mr. Schade denied having any such recollection, and it was only after having his memory refreshed by being shown Ms. Chen's email did he recall the incident. *Id.* His memory refreshed, Mr. Schade was then asked if Ms. Chen had handled this data request appropriately. Mr. Schade stated that "what [Ms. Chen] did was consistent with what a good performer would do: continue to follow up. If ACE can't share the information, we need to say that. In that case I hope she would make sure the request is being handled. If a data request comes in don't let it go." *Id.* at 2-3. Needless to say, Mr. Schade has not been charged for initially denying to investigators that he had any recollection of Ms. Chen's request to release information to the public in May, 2012.

Mr. Adams somehow constitutes an "office-wide policy directive" whose purported "violation" is somehow relevant of any issue at this trial.

Finally, the government cannot carry its burden of showing that Ms. Chen's responses to questions about this incident were in any fashion misleading or inaccurate. Unless the government can prove something wrongful about Ms. Chen's responses, they are not relevant. Moreover, attempting to prove that Ms. Chen's purported statements about "the source and timing of her knowledge of Mr. Schade's 'policy directive'" were "deliberately false and misleading" would be an enormous distraction and time-waste at trial and, ultimately, would prove nothing. Even if Ms. Chen had not been truthful with investigators when discussing this peripheral issue, this fact would not assist the jury in deciding any relevant issue. Its admission would lead, invariably, to "confusing the issues," it would distract the jury, and would cause "undue delay [and] wasting [of] time." It would constitute nothing more than an attempt by the government to introduce propensity evidence, *i.e*., Ms. Chen was untruthful when asked about sending information to Mr. Adams, so therefore she is more likely to have been untruthful when answering the government's questions about the actual issues at trial. Similarly, the jury would be tempted to misuse this evidence by believing that (i) if Ms. Chen sent data to Mr. Adams, then (ii) perhaps she was the type of person who would have tried to send restricted data to someone in China, so (iii), perhaps she was downloading this information for someone in China, so (iv) perhaps she had a wrongful intent when she downloaded the data. This type of propensity evidence is, of course, prohibited by 404(b).

*Communications between Ms. Chen and Deborah Lee in 2009*

The government has given notice that it seeks to introduce the following information at trial:

> The facts and circumstances surrounding the defendant's previous requests made to Ms. Lee (dating approximately three years prior) for specific and sensitive data

11

> regarding water storage capacity for U.S. reservoirs and design drawings both of which were not necessary for, and were clearly beyond the scope of her NOAA employment position as a hydrologist at the Wilmington, Oh facility.

Ex.1, p. 1.  The events for which Ms. Chen will stand trial occurred in May, 2012.  The government, by its notice, has indicated that it now seeks to introduce evidence of a conversation that occurred three years prior to these events, in *2009*.  This "evidence" should be precluded because it is far too remote in time and too tangential to be probative of any relevant issue at this trial.  First, the government provides no specificity as to why it is relevant.  The issue in the trial is whether Ms. Chen *knew* that she had exceeded her computer access in May, 2012.  The mere fact that she made a data request three years earlier proves nothing about her intent in 2012.  Second, the government is simply wrong when it states that Ms. Chen ever requested information from Ms. Lee, or, for that matter, from anyone else that was "clearly beyond the scope of her NOAA employment position as a hydrologist."  To the contrary, Ms. Chen's job required her to seek information from a wide variety of sources.  Some of this information may, ultimately, have been unhelpful; other information may have been useful.  But the government cannot prove that Ms. Chen *knew in advance*, before she looked at it, that the information she sought in 2009 was completely useless.  In addition, of course, the mere instruction to the jury about how to evaluate a bad act in 2009 implies that Ms. Chen did something wrong at that time.  This impermissible prejudice cannot be injected into the trial.  The evidence should be excluded.

*Communications between Ms. Chen and Deborah Lee on May 24, 2012*

Finally, the government has indicated that it also seeks to introduce the following evidence:

> The facts and circumstances surrounding the defendant's May 24, 2012 telephone conversation with Deborah H. Lee [of the Army Corp of Engineers] in which the defendant attempted to obtain a variety of detailed and otherwise sensitive information concerning the design, construction and management of various U.S.

12

>dam projects and facilities together with access to the U.S. Army Corps of Engineers water control manuals.

Ex. 1, p. 1. Ms. Chen allegedly accessed the NID improperly on May 10 and May 15, 2012. Ex 2, p. 3. Those are the same dates that Ms. Chen allegedly downloaded the data at issue. Any conversation between Ms. Lee and Ms. Chen making a request for such information on May 24, 2012—two weeks later—has no relevance to whether Ms. Chen *knew* that she was exceeding her access on May 10 and May 15.

After the conversation on May 24, 2012, Ms. Lee contacted security at the Department of Commerce out of concern about Ms. Chen's loyalty to the United States. This communication led the government to investigate whether Ms. Chen was acting as an agent on behalf of China. Of course, Ms. Lee's concern proved to be groundless. It is beyond dispute that Ms. Chen never provided any restricted or sensitive information to *anyone*. Ms. Lee's suspicions, feelings, hunches, and suppositions are not admissible or relevant. Nor should this conversation, which gave rise to Ms. Lee's ill-founded suspicions, be admitted. It is simply not relevant to the jury why the government began this investigation. The fact is, the investigation occurred, and the jury will hear about its results: Ms. Chen downloaded, twice, a single document from the NID. The government will contend and, the defense presumes, introduce evidence trying to prove that this information was not relevant to Ms. Chen's job and that she had no business looking at it. The defense will contest this. But the conversation with Ms. Lee, and Ms. Lee's impressions of it, are not relevant. As discussed above, the conversation proves nothing about whether *Ms. Chen knew* she was exceeding her access and the probative value of Ms. Lee's impression is far outweighed by the substantial unfair prejudice that would flow from its admission.

## CONCLUSION

For all the foregoing reasons, the defense respectfully requests that the Court grant the instant motion and preclude the government from admitting the proffered 404(b) evidence.

Dated:  February 9, 2015                                          Respectfully submitted,


*/s/ Thomas E. Zeno*                                               */s/ Peter R. Zeidenberg*
Thomas E. Zeno (0088870)                              Peter R. Zeidenberg, *Pro Hac Vice*
SQUIRE PATTON BOGGS (US) LLP              ARENT FOX LLP
221 East Fourth Street, Suite 2900                      1717 K Street, N.W.
Cincinnati, Ohio 45202                                        Washington, D.C. 20006-5344
Telephone: (513) 361-1202                                 Telephone: (202) 857-6000
Facsimile: (513) 361-1201                                   Facsimile: (202) 857-6395
thomas.zeno@squirepb.com                             peter.zeidenberg@arentfox.com

*Attorneys for Defendant Xiafen "Sherry" Chen*

## CERTIFICATE OF SERVICE

I certify that on February 9, 2015, I electronically filed the foregoing Motion to Preclude Admission of 404(b) evidence with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Peter R. Zeidenberg*
Peter R. Zeidenberg, *Pro Hac Vice*

*Attorney for Defendant Xiafen "Sherry" Chen*