UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**United States of America,**

   *Plaintiff*,

v.                   Case No. 3:14-cr-149
                       Judge Thomas M. Rose

**Xiafen Chan, also known as Sherry Chen,**

   *Defendant*.

---

**ENTRY AND ORDER AMENDING BENCH RULING ON PENDING MOTIONS. THE PARTIES HAVING REPRESENTED THAT DISCOVERY HAS BEEN PROVIDED, FIRST MOTION FOR DISCOVERY BY XIAFEN CHEN,** DOC. 16**, IS MOOT. MOTION IN LIMINE BY XIAFEN CHEN,** DOC. 22**, IS GRANTED IN PART AND DENIED IN PART—GOVERNMENT MAY NOT REFER TO DEFENDANT'S CITIZENSHIP, MOTION IS DENIED IN ALL OTHER REGARDS. MOTION TO PRECLUDE ADMISSION OF 404(b) EVIDENCE BY XIAFEN CHEN,** DOC. 35**, IS GRANTED IN PART AND DENIED IN PART—GOVERNMENT MAY UTILIZE DEFENDANT'S 2012 EMAILS WITH LEE, MOTION GRANTED IN ALL OTHER REGARDS. MOTION TO DISMISS SUPERCEDING INDICTMENT BY XIAFEN CHEN,** DOC. 29**, IS DENIED.**

---

Pending before the Court are a variety of motions by Defendant Xiafen Chen: First Motion for Discovery by Xiafen Chen, doc. 16, Motion in Limine by Xiafen Chen, doc. 22, Motion to Preclude Admission of 404(B) Evidence by Xiafen Chen, Doc. 35; and Motion to Dismiss Superseding Indictment by Xiafen Chen. Doc. 29. The Parties having represented to the Court

that discovery issues would be resolved on January 23, 2015, (see doc. entry Jan. 22, 2015), First Motion for Discovery by Xiafen Chen, doc. 16, is **MOOT**. The other outstanding motions will be resolved herein.

### I.  Background

According to the complaint, during late April 2012 and early May 2012, Defendant Xiafen Chen, a United States citizen who worked as a hydrologist for the National Oceanic and Atmospheric Administration, traveled to China to visit family members. (See R. 20, Def. Motion at 63). While there, Ms. Chen also met with a former colleague who had become Vice-Minister of China's Water Institute. (See R. 20, Def. Motion at 63). This individual asked Ms. Chen about dams in the United States. Ms. Chen is alleged to have agreed to attempt to collect this information for him upon her return to this country. (See R. 20, Def. Motion at 63).

The government alleges that Chen returned to her National Oceanic and Atmospheric Administration facility in Wilmington, Ohio, and obtained a co-worker's password to restricted portions of the National Inventory of Dams database.[1] (See R. 28, Superseding Indictment, at 122-24). The government further alleges that, using this password, on at least two occasions, Ms. Chen logged onto restricted database fields and downloaded to her computer sensitive information from them. (See R. 28, Superseding Indictment, at 122-24). Ms. Chen did not herself have a password that would permit her to enter the database or download materials from it to her computer. (See R. 28, Superseding Indictment, at 122-24).

During June 2013, federal agents contacted Ms. Chen and proceeded to speak with her concerning whether she had ever accessed the government-restricted portions of the National Inventory of Dams database. (See R. 28, Superseding Indictment, at 122-24). The government

---

1 The co-worker has not been indicted.

alleges Ms. Chen acknowledged that a colleague in Beijing had approached her concerning locks and dams in the United States, but that Ms. Chen initially indicated that this conversation had occurred two years prior, instead of one year prior. (See R. 28, Superseding Indictment, at 124-25). This was clarified when, during the same interview, Ms. Chen voluntarily produced for the special agents emails saved on her personal email account documenting conversations in 2012 between herself and the colleague in China. (See R. 28, Superseding Indictment, at 124-25).  When asked why she had conversed with this individual on her personal -- as opposed to official government -- email, Ms. Chen indicated that it was a "fuzzy boundary" in that her colleague was making a personal, as opposed to official, request for information concerning the United States' dams.

In January 2015, a federal grand jury returned a multi-count superseding indictment against Ms. Chen, alleging in Count One that, in violation of 18 U.S.C. § 641, Ms. Chen "knowingly, intentionally, and without proper authority . . . convert[ed] to her own use . . . restricted and proprietary computerized fields of data . . . contained in the National Inventory of Dams." (See R. 28, Superseding Indictment, at 1, PAGEID 121).  In a similar vein, Counts Two and Three charge Ms. Chen with "intentionally" exceeding her authorized access to allegedly restricted portions of the database, in violation of 18 U.S.C. § 1030. (See R. 28, Superseding Indictment, at 121-22).

The superseding indictment also contains multiple false statement charges against Ms. Chen, including Count Eight, which specifically alleged that, during her June 2013 interview with federal agents, Ms. Chen "knowingly and willfully [made] a material false representation [specifically] -- the last occasion she was approached by an individual identified to the Grand Jury as 'J.Y', the purported Vice-Minister . . . of China['s] Water Institute was in 2011." (R. 28, Superseding Indictment, at 124-25).  The superseding indictment elaborated that Ms. Chen's

statement was false in that "she had personally met and held discussions with 'J.Y' . . . during a visit to … [China] between April 14 and May 8, 2012." (Id.)

Defendant has filed two motions seeking to exclude evidence and one seeking to dismiss the indictment.   The Court will first consider the sufficiency of the indictment.

Defendant's Motion to Dismiss Counts One, Two and Three of the indictment should be dismissed for failure to allege what was stolen, how it was stolen or when it was stolen. Doc. 29. Replying to the government's response to the motion, Defendant shifts to a claim that the indictment fails to properly allege *scienter* sufficient to survive a motion to dismiss. Doc. 34.

The Federal Rules of Criminal Procedure require an indictment to include a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Correspondingly, the Sixth Circuit has provided clear guidance as to whether an indictment is sufficient. Specifically, a sufficient indictment "(1) set[s] out all of the elements of the charged offense and . . . give[s] notice to the defendant of the charge he faces; and (2) [is] sufficiently specific [so as] to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (citing *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005)); *United States v. Cobb*, 397 Fed. App'x 128, 137 (6th Cir. 2010).

Thus, an indictment need not deal in absolutes to pass Constitutional muster. See, e.g., *United States v. Horton*, 580 Fed. App'x 380, 386 (6th Cir. 2014) (holding indictment provided proper notice and complied with due process where it alleged "a seven-day timeframe during which [the defendant] committed the offense"); *United States v. Ross*, 43 Fed. App'x 751, 758 (6th Cir. 2002) (rejecting claim that indictment was vague and overbroad even though it "span[ned] a period of over two years and fail[ed] to specify the manner in which the crimes were committed");

see also *United States v. Allen*, 2014 WL 3368605, *8 (E.D. Tenn. July 9, 2014) (rejecting defendant's claim that indictment failed to provide adequate notice where it alleged conspiracy occurred over 12-year span, but did not identify when she participated in it). For instance, a charging instrument provides adequate notice and complies with due process when it alleges that a defendant committed an offense over a range of potential dates rather than identifying an exact time that her crime occurred. See, e.g., *Horton*, 580 Fed. App'x at 386 (holding indictment provided proper notice and complied with due process where it alleged "a seven-day timeframe during which [the defendant] committed the offense"); see also *Bruce v. Welch*, 572 Fed. App'x 325, 331 (6th Cir. 2014) (suggesting that four-year timeframe alleged in the indictment during which crime may have been committed satisfied constitutional notice requirements). Finally, in determining whether an indictment provides adequate notice and "sufficiently informs a defendant of an offense," "[c]ourts utilize a common sense construction" of the charging instrument. *Maney*, 226 F.3d at 663.

Counts One, Two and Three of the superseding indictment comply with these mandates. Each count correctly tracks the language of the charged statutes -- 18 U.S.C. § 641 in the case of Count One and 18 U.S.C. § 1030(a)(2) in the case of Counts Two and Three. All three counts identify the dates on which with alleged offenses occurred with sufficient particularity. Ms. Chen notes that Count One alleges a two-week window -- in which she is alleged to have committed the offense. However, the Sixth Circuit has concluded that similar time ranges provide adequate notice to a defendant.

As to what was stolen, Count One identifies "certain sensitive, restricted, and proprietary computerized fields of data involving critical national infrastructure contained in the National Inventory of Dams database which is maintained by the United States Army Corps of Engineers in

5

conjunction with the National Dam Safety Review Board." (R. 28, Superseding Indictment, at 121). Likewise, Counts Two and Three give notice that Defendant improperly accessed "the National Inventory of Dams database" and, in doing so, obtained "sensitive, restricted, and proprietary computerized fields of data involving critical national infrastructure." (R. 28, Superseding Indictment, at 121-22).

Finally, as to how, the precise technique or methodology that the defendant used to violate a particular statute need not be alleged in the indictment. See, *e.g.*, *United States v. Tucker*, 473 F.2d 1290, 1293 (6th Cir. 1973) ("It will suffice for an indictment merely to allege that the security was falsely made. A defendant may require specific information about the technique employed to make the security false by demanding a bill of particulars as authorized by Fed. R. Crim. P. 7(f)."); *Allen*, 2014 WL 3368605 at *8 (rejecting claim that indictment lacked sufficient notice to defendant where it largely tracked statutory language; specific actions in which defendant engaged best left to discovery).

As to *scienter*, Count One of the Superseding Indictment alleges that Ms. Chen "knowingly" and "intentionally" stole, purloined and converted to her own use or the use of another certain property of the United States. Title 18, United States Code, § 641 prescribes punishment for any person who "embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any record, voucher, money or thing of value of the United States." 18 U.S.C. § 641. Under Sixth Circuit precedent, "[t]o support a conviction [under this statute], the [United States] must establish that the defendant[:] (1) knowingly (2) stole or converted [to his use or] to the use of another (3) something of value of the United States." *United States v. Hall*, 549 F.3d 1033, 1038 (6th Cir. 2009) (emphasis added); *United States v. Foreman*, 180 F.3d 766, 769 (6th Cir. 1999) ("The present charge [i.e., a violation of 18 U.S.C. § 641] requires proof that

6

defendant (1) knowingly (2) stole or converted [to his own use or] to the use of another (3) something of value of the United States"); see also *United States v. Stephens-Miller*, 582 Fed. App'x 626, 641 (6th Cir. 2014) (same); *United States v. Haranda*, 333 F. Supp. 2d 618, 621 (E.D. Mich. 2004) (same).

As for Counts Two and Three, the superseding indictment properly alleges a violation of 18 U.S.C. § 1030(a)(2).   Chen contends that the indictment must allege that she acted "willfully." Her claim lacks merit. The United States Code at 18 U.S.C. § 1030(a)(2) prescribes punishment for any person who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any department or agency of the United States." 18 U.S.C. § 1030(a)(2)(B). Consistent with the plain language of the statute, the United States must plead in the indictment and prove at trial that the defendant acted not willfully, but intentionally. See, e.g., *United States v. Phillips*, 477 F.3d 215, 222-23 & n.6 (5th Cir. 2007) (explaining that, in 1986, Congress modified the *scienter* requirement for 1030 offenses, changing the standard from "knowingly" to "intentionally").

Counts Two and Three of the superseding indictment comport with these requirements. Both counts allege that Ms. Chen "intentionally exceeded authorized" access to a certain protected computer system of the United States.   Therefore, Defendant's motion to dismiss, doc. 29, will be denied.

Next, the Court will deal with Defendant's Motion to Preclude the Admission of 404(b) Evidence. Doc. 35.   Defendant's motion seeks to exclude three instances of Rule 404(b) evidence. The government has stated that it seeks to introduce evidence concerning data Defendant is alleged to have :

> The facts and circumstances surrounding the defendant's May 2013 e-mail string generated by and between Thomas E. Adams, III (a non-NOAA [National Oceanic and Atmospheric Administration] employee at that time) in which she provided to Mr. Adams certain sensitive NOAA data in direct violation of an April 16, 2013 office-wide policy directive issued by Trent Schade, the Hydrologist in Charge of NOAA's Wilmington, Ohio facility that all outside requests for data or code be first vetted and cleared through him. When questioned about this incident, and the source and timing of her knowledge of Mr. Schade's policy directive, the defendant provided untruthful, and otherwise deceptive explanations to criminal investigators.

404(b) Notice, Ex. 1, p. 1.

The government alleges Ms. Chen violated this policy by providing internal Ohio River Forecast Center data to a former co-worker named Thomas Adams in a series of e-mail messages spanning April 10-May 16, 2013. According to the government, Ms. Chen wrote in an e-mail to Adams, she stated "I will not tell anyone."

A second category of Rule 404(b) evidence the government seeks to admit consists of communications between Ms. Chen and Deborah Lee. The government seeks to introduce as substantive evidence:

> The facts and circumstances surrounding the defendant's previous requests made to Ms. Lee (dating approximately three years prior) for specific and sensitive data regarding water storage capacity for U.S. reservoirs and design drawings both of which were not necessary for, and were clearly beyond the scope of her NOAA employment position as a hydrologist at the Wilmington, Oh facility.

Ex.1, p. 1.

Finally, the government also wants to utilize another round of communication between Ms. Chen and Lee:

> The facts and circumstances surrounding the defendant's May 24, 2012 telephone conversation with Deborah H. Lee [of the

8

>Army Corp of Engineers] in which the defendant attempted to obtain a variety of detailed and otherwise sensitive information concerning the design, construction and management of various U.S. dam projects and facilities together with access to the U.S. Army Corps of Engineers water control manuals.

Ex. 1, p. 1.

The government asserts that admission of evidence concerning the 2009 and May 24, 2012 conversations between the Defendant and Ms. Lee and the May 2013 emails with Thomas Adams would provide context to the events of May 10th, 11th, 14th and 15th, 2012.

Rule 404(b) stipulates that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. However, as the government asserts, Federal Rule of Evidence 404(b) does not apply to other acts that either are inextricably intertwined with, or constitute background evidence concerning, the charged offense. See *United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000). Often referred to as *res gestae* evidence, testimony and exhibits fall within this doctrine if they "are inextricably intertwined with the charged offense or [if] the telling of [these other acts] is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). As the Sixth Circuit has observed:

>Proper background evidence has a causal, temporal, or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Hardy*, 228 F.3d at 748. Phrased differently, such evidence is admissible without regard to Rule 404(b) because it "flesh[es] out the circumstances surrounding the crime with which defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context."

9

*United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992). To bar such evidence would be tantamount to requiring the jury to "make its decision in a void -- without knowledge of the time, place, and circumstance of the acts which form the basis for the charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992).

The government also asserts that the prior acts are sufficiently close in time and substantially similar in nature to the charged offense so as to be admissible under Rule 404(b). To be substantially similar, the acts "need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of criminal intent." *United States v. Benton*, 852 F.2d 1456, 1468 (6th Cir. 1988). There "is no absolute maximum number of years that may separate a prior bad act and the offense charged," *United States v. Ismail*, 756 F.2d 1253, 1259 (6th Cir. 1985).

Of the three categories of Rule 404(b) evidence the government seeks to introduce, the Court can only see the May 24, 2012 emails with Lee as inextricably linked with the charged offense. The government paints a picture wherein these conversations were a part an alleged attempt to acquire information in response to a request made by the Vice-Minister of China's Water Institute. The picture the government depicts, however, does not provide any theory whereby emails a year later with Thomas Adams would be inextricably intertwined. Indeed, there is no perceptible relationship between the events at all, beyond an attempt to show that defendant possessed a character that would commit the crime with which she is indicted. Events a year after the charged conduct certainly are not a "cause" of or "prelude" to the charged conduct. See *Hardy*, 228 F.3d at 748. Similarly, there is no other nexus between Defendants' 2009 emails with Lee and the charged conduct. Emails sent long before Defendant met with the Vice-Minister in 2012 cannot be said to be part of a series of events having their cause in 2012. Therefore, the

Court will grant Defendant's Motion to Exclude Rule 404(b) evidence with regard to the 2009 emails with Lee and the 2013 emails with Adams.2

Defendant's Motion *in Limine* requests an order pursuant to Federal Rules of Evidence 401 and 403 to preclude the government from introducing any evidence related to Ms. Chen's nationality, her trips to China, or her contacts and communications with her former colleague in China.

The government perceives "nationality" to refer to an individual's country of citizenship. Doc. 32 at 2 n.1 (citing BLACK'S LAW DICTIONARY (2009) (defining "nationality" as "[t]he relationship between a citizen of a nation and the nation itself, customarily involving allegiance by the citizen and protection by the state; membership in a nation; this term is often used synonymously with citizenship")). Thus, because Ms. Chen is an United States citizen, the government stipulates that it does not intend to introduce evidence concerning Ms. Chen's citizenship at trial. Because Ms. Chen does not respond to clarify any other purpose of its motion to exclude reference to Chen's nationality, the Court will grant this portion of the motion in limine.

Consistent with Rules 401 and 403, the United States may properly introduce at trial evidence concerning Mr. Chen's 2012 trip to China and her visit with her colleague during that trip, in which he requested information concerning dams in the United States. This information is directly relevant to the charged offenses, and its prejudice to the defense results, not from an improper basis, but from its probative force.

These matters prove relevant under Rule 401's "extremely liberal" standards of admissibility. *United States v. Deuman*, 568 Fed. App'x 414, 420 (6th Cir. 2014). This provision

---

2 The government position--derived from Defendant's assertion that the government indictment reflects a mistake by the government—that the 2013 emails with Adams should be admitted to show absence of mistake is risible.

deems evidence relevant so long as it "has any tendency to make a fact," which is of consequence in determining the action, "more or less probable than it would be without [the material.]" Fed. R. Evid. 401(a)-(b). Under this broad standard, "even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not [under Rule 401] exclude the evidence if it has the slightest probative worth." *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006) (district court properly observed that government was "permitted to build an incremental case" under Rule 401). Nor may a district court deem evidence irrelevant merely given "the availability of alternative proofs of [an] element." *United States v. Douglas*, 482 F.3d 591, 597 (D.C. Cir. 2007).

Here, the evidence concerning Ms. Chen's 2012 trip to China and ensuing meeting with a colleague there satisfy this standard. Count Eight of the superseding indictment alleges that, in violation of 18 U.S.C. § 1001(a)(2), Ms. Chen told federal investigators that it occurred in 2011 – a different year than the one in which she is she alleged to have improperly accessed a protected government computer system. Evidence that Ms. Chen traveled to China during 2012 and met with a colleague at that time therefore arguably establishes an essential element of the charged 18 U.S.C. § 1001 offense – namely, a materially false statement to investigators. See Sixth Circuit Pattern Jury Instruction 13.02 (stating that, in prosecution under 18 U.S.C. § 1001, the United States must establish, among other things, that the defendant's "statement was false"). This evidence is therefore relevant to the superseding indictment.

Additionally, a jury is not required to consider a case in a factual vacuum; it is well-established that the United States properly may introduce evidence that provides background to, and establishes the context for, the charged offenses. See, e.g., *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (*res gestae* evidence helps provide context to the jury); *United States v.*

*Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (barring *res gestae* evidence would be tantamount to requiring the jury to "make its decision in a void without knowledge of the time, place, and circumstance of the acts which form the basis for the charge") Indeed, the meeting in which a colleague requested information concerning dams in the United States establishes that Ms. Chen accessed the restricted database for personal, as opposed to, official government reasons. For similar reasons, one could conclude from this information that, in downloading sensitive information to her computer Ms. Chen had converted this government material for her own personal use. See, e.g., *United States v. Sparkman*, 112 Fed. App'x 358, 360 (5th Cir. 2004) (temporary conversion of government funds for own use satisfied elements of 18 U.S.C. § 641).

Neither should the evidence be barred under Rule 403. This provision contemplates that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'" *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). In sum, Rule 403 favors admissibility; as such, exclusion of evidence under this provision constitutes an extraordinary remedy. See *United States v. Jones*, 554 Fed. App'x 460, 473 (6th Cir. 2014) (White, J., concurring) ("Rule 403 favors admissibility"); see also *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) ("Rule 403 is an extraordinary remedy which the district court should invoke sparingly," and "[t]he balance ... should be struck in favor of admissibility").

Evidence regarding Ms. Chen's 2012 trip to China can be used to establish an element of a charged offense – namely, that her statement concerning the timing of her visit to China and

13

ensuing meeting with her colleague was false. This evidence has legitimate probative force and therefore should not be excluded. See *Gibbs*, 182 F.3d at 430. Likewise, these matters properly establish not only Ms. Chen's intent and motive for accessing and downloading information from the database but also that she did so in an effort to convert this government property for personal use. To be sure, in the most conclusory manner, Ms. Chen argues that this evidence will cause the jury to "baselessly speculate" that there is connection between her efforts to access the database and her colleagues request for information. However, the close temporal connection between the alleged events separating the colleague's request for information and Ms. Chen's decision to access a database can be used to establish a permissible link between the two. Cf. *United States v. Watson*, 489 Fed. App'x 922, 927 (6th Cir. 2012) (noting relevance of temporal connection between illegal search and later confession); *Parries v. Makino, Inc*., 148 Fed. App'x 291, 301 (6th Cir. 2005) ("The Sixth Circuit has found timing to be a relevant factor in a showing of causal connection" between two events). Nor has Ms. Chen articulated how evidence of this type – namely, a meeting between self-described former colleagues – would cause a jury to convict based, not on the facts and law, but upon irrational passion or confusion. See, e.g., *United States v. Buford*, 106 Fed. App'x 400, 403 (6th Cir. 2004) (testimony that defendant threatened witnesses admissible under Rule 403 as threats not "inflammatory"); *United States v. Hollie*, 198 F.3d 248, 1999 WL 1021860 at *8 (6th Cir. 1999) (autopsy photos admissible under Rule 403 where they negated defendant's claim concerning cause of death). In sum, this evidence is also admissible under Rule 403. Therefore, the Court will deny Defendant's motion in limine. Doc. 22.

As the parties have exchanged discovery, First Motion for Discovery by Xiafen Chen, doc. 16, is **MOOT**. Motion to Preclude Admission of 404(b) Evidence by Xiafen Chen, doc. 35, is **GRANTED IN PART AND DENIED IN PART**. The government may present evidence

concerning the May 24, 2012 email exchange with Deborah Lee, but may not present evidence of 2009 emails with Lee, or May 2013 emails exchanged with Thomas Adams.  Defendant's Motion in Limine is **GRANTED IN PART AND DENIED IN PART.**  As the government has stipulated, it may not allude to Defendant's citizenship at trial.  In all other regards, the motion in limine is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, March 9, 2015.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE